Bruce H. Nagel, Esq.
Attorney Id No. 025931977
*bnagel@nagelrice.com*
Diane E. Sammons, Esq.
Attorney Id No. 031751981
*dsammons@nagelrice.com*
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ  07068
973-618-0400
Attorneys for *Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSH FINKELMAN, on behalf of himself and the Putative class, | : |
| | : Civil Action No. |
| Plaintiffs, | : |
| vs. | : |
| NATIONAL FOOTBALL LEAGUE, | : |
| Defendants. | : |

**COMPLAINT – CLASS ACTION**

Plaintiff, Josh Finkelman, residing in New Brunswick, New Jersey, by and through his undersigned attorneys, by way of Complaint, brings this suit against Defendant National Football League ("Defendant") to recover damages owed to him and others similarly situated.

## I. NATURE OF THE ACTION

1. Every year, the National Football League ("NFL") prints tens of thousands of Super Bowl tickets, yet it only allocates a meager one percent of these tickets for release to the general public through a lottery system, forcing all other fans into a secondary market for the tickets where they must pay substantially more than the ticket's face value to attend one of the most popular and iconic sporting events of the year.

2. The profits from these secondary market sales are returned to the NFL and its franchisees in lucrative contracts with secondary ticket buyers who must purchase large blocks of tickets to regular season games of a franchise team in order to secure a small allotment of Super Bowl tickets. The secondary market buyer then enhances their profitability by packaging their tickets into expensive deals requiring the interested fan to purchase extras such as multi-night minimum stay hotel rooms, pre-game parties and limousine services. One such package for the upcoming game sells at a hefty Eighteen Thousand, Nine Hundred and Eighty-Nine Dollars per person ($18,989.00), exclusive of airfare.[1] These packages further manipulate the

---

[1] Amy Kuperinsky, *That's the ticket: What $19,000 will get you at Super Bowl XLVIII*, Star Ledger (November 8, 2013), available at www.nj.com/entertainment/index.ssf/2013/11/super_bowl_xiv111_2014_ticket_packages/html/19665097814/Tower/NJONLINE. The package includes a VIP ticket, a stay at the Four Seasons Hotel in midtown Manhattan, black car service to the game, a pregame Party at the Meadowlands, and a party the day before the game at the posh Maxim nightclub in New York City.

market price of the tickets, thereby giving the purchaser no choice but to pay grossly inflated prices for the tickets.

3. The aforesaid acts constitute a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.* ("CFA") that result in damage to the Plaintiff Class and Defendant's Unjust Enrichment.

4. The action seeks damages and compensation to all class members from the Defendant, interest, disgorgement, costs of suit, treble damages and attorneys' fees as permitted under the Consumer Fraud Act or the common law, and any other damages deemed just and proper by the Court.

5. This class action is brought pursuant of Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who purchased tickets, who will purchase tickets or who cannot afford to purchase tickets to Super Bowl XLVIII at a ticket price that is higher than the face value of the ticket from a period beginning with the first day tickets went on sale through the present. Excluded from the class are counsel representing the class and all persons employed by said counsel, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate

families and judicial staff, and any individual whose interest are antagonistic to other class members.

## II. JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from the defendant, and seeks in the aggregate more than Five Millions Dollar ($5,000,000), exclusive of costs and interest. On information and belief, more than two-thirds of the members of the Class defined below are residents of states other than New Jersey.

## III. PARTIES

7. Plaintiff Josh Finkelman ("Finkelman") is an individual residing at 110 Somerset Street, Apt. 1807, New Brunswick, New Jersey, a citizen of the State of New Jersey and a purchaser of tickets to Super Bowl XLVIII. Plaintiff is a representative plaintiff.

8. Upon information and belief, Defendant, NFL is a business entity with its principal place of business of 345 Park Avenue, New York, New York and upon information and belief, is licensed to conduct business in the State of New Jersey.

## IV. VENUE

9. Venue in this action properly lies in this District, pursuant to 28 U.S.C. Sec. 1319(a) and the Defendant is subject to personal jurisdiction in the District in which this action is filed.

## V. FACTUAL BACKGROUND

10. The Super Bowl XLVIII will be held at MetLife Stadium located at One MetLife Stadium, in the Meadowlands, Rutherford, New Jersey on February 2, 2014.

11. The NFL allocates one percent (1%) of its tickets to the general public.[2] These tickets are distributed via a random drawing from entries submitted from February to March of the previous year.[3] Those who are selected can then purchase tickets at the face value of the tickets.

12. The remaining tickets are distributed with seventy-five percent (75%), split among the thirty-two (32) NFL teams: five percent (5%) to the host team, seventeen and a half percent (17.5%) to each team represented in the Super Bowl, while thirty-five percent (35%) are split among the remaining twenty-nine (29) teams, with each getting 1.2%.[4] The remaining twenty-five percent (25%) is controlled by the NFL for distribution to

---

[2] Luke Funk, *How Can I Buy Super Bowl Tickets?*, MyFoxNY.com, Feb. 4, 2013, www.myfox.com/story/17422042/how-can-I-buy-superbowl-tickets.
[3] *Id.*
[4] *Id.*

5

companies, broadcast networks, media sponsors, the host committee and other league insiders.[5]

13. Upon information and belief, individual franchise teams do not make their allotments of Super Bowl tickets available to the general public, but instead offer them, in large part, to resellers, who grossly inflate the price and then repackage the tickets into costly packages which can include luxury hotels, restaurants, pre-game parties and limousines. The resellers are promised access to these tickets from the franchises, via ticket contracts entered into years in advance, that provide for specific quantities of Super Bowl tickets before the tickets are even printed.

14. In 1989, Congress granted the NFL tax exempt status, thereby saving it millions in tax revenues. This status further protects its lucrative television contracts. It is estimated that NFL stadium subsidies and tax favors amount to approximately one billion dollars ($1,000,000,000) annually.[6]

15. While State laws and IRS rules generally prohibit the use of nonprofit status as an avenue for personal enrichment, according to the League's annual Form 990, in 2011, the most recent year for which numbers are available, the NFL paid a

---

[5] Id.
[6] Gregg Easterbrook, *How the NFL Fleeces Taxpayers*, The Atlantic (October 2013), available at www.theatlantice.com/magazine/print/2013/10/how-the-nfl-fleeces-taxpayers/309448/.

total of almost Sixty Million Dollars ($60,000,000) to its leading top executives.[7]

16. This year alone, it is estimated that broadcast networks will pay Four Billion Dollars ($4,000,000,000) to the NFL for the right to broadcast its games.[8]

17. Despite the heavy public subsidies it receives and the paucity of tickets available to the public, the NFL intends to almost double its ticket prices for the most coveted Super Bowl XLVIII.

18. It is anticipated that tickets to club-level mezzanine seats will sell for approximately Two Thousand, Six-Hundred Dollars ($2,600.00) per ticket, up from the same ticket selling for One Thousand, Two Hundred Dollars ($1,250.00) at the 2012 Super Bowl Game in New Orleans.[9]

19. MetLife's seating capacity of approximately 77,500 seats will bring in revenues that could exceed Two Hundred Million Dollars ($200,000,000.00).[10]

---

[7] Id.
[8] Id.
[9] Matthew Futtterman, *NFL to Charge New York Prices*, The Wall Street Journal (September 17, 2013), available online. wsj.com/news/articles/SB10001424127887324665604579079424146436620#printmcode)
[10] Michael McCarthy, *Super Bowl XLV Set to Bring Record Revenue to Texas*, USA Today (Feb. 3, 2011) http://usatoday30.usatoday.com/sports/football/nfl/2011-02-03-super-bowl-revenue_N.htm (Articles claims the Super Bowl in Dallas, Texas in 2011 was poised to bring in 200 million in ticket revenues and in concessions alone. It is likely that the 2013 game will exceed this, given the sharp increase in ticket prices and the enhanced demand in the NJ/NY metropolitan area.)

20. According to the NFL itself, research on the secondary market during the 2013 Super Bowl shows that many Six Hundred Dollars ($600.00) tickets sold for Three Thousand Dollars ($3,000.00), while seats near midfield went for up to Six Thousand, One Hundred Dollars ($6,100.00) and premium club seats went for Six Thousand, Four Hundred Dollars ($6,400.00)- multiples of their seat face value.[11]

21. In 2001, the New Jersey Legislature passed a law aimed at the practice of charging excessive premiums in excess of the price of the tickets. The bill also prohibited the practice of the withholding of more than five percent (5%) of the available seating from sale to the public for any event. The sponsors of the Bill envisioned penalties to include the remedies of the Consumer Fraud Act.

22. Indeed, the passage of the law, N.J.S.A. 56:8-35-1, *et. seq.* became embodied in the New Jersey Consumer Fraud Act.

23. The NFL practice of withholding all but one per cent (1%) of its tickets to the general public violates the New Jersey Consumer Fraud Act.

### FACTS RELATING TO PLAINTIFF

24. On December 30, 2013, Plaintiff purchased two (2) tickets to Super Bowl XLVIII.

---

[11] Id.

25. Plaintiff paid Two Thousand Dollars ($2,000) for each ticket which, upon information and belief, was far in excess of the face value of the tickets.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action on his own behalf, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P 23 (b) (3). The Class consists of potentially thousands of ticket purchasers to Super Bowl XLVIII victimized by Defendant's unlawful practices.

27. The Class consists of all persons who paid for, or will pay for, or could not afford to pay for tickets to Super Bowl XLVIII in excess of the printed ticket price. The Class excludes counsel representing the class and all person employed by said counsel, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

28. Defendant subjects Plaintiff and each of the Class members to unlawful practices and harmed them in the same

manner. Now, Plaintiff and each Class Member seeks to enforce their rights and remedies pursuant to the New Jersey Consumer Fraud Act and the equitable theory of Unjust Enrichment.

29. <u>Numerosity</u>: The proposed class is so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the Class consists of thousands of members.

30. <u>Typicality</u>: Plaintiff's claims are typical of the claims of their respective Class members in that they suffered similar damages resulting from a single course of conduct by Defendant. Each of the class members asserts the same legal causes of action.

31. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interest of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and this counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to the Class.

32. <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class

suffered harm as a result of Defendant's unlawful and fraudulent conduct. A class action is superior to other viable methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in the Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

33. <u>Commonality</u>: There are questions of law and fact common to Plaintiff and the class that predominate over any questions affecting only the individual members of the class. The common questions of law and fact include, but are not limited to, the following:

a. Whether the NFL withheld more than five percent (5%) of Super Bowl XLVIII tickets to the general public;

b. Whether the NFL's actions violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-35.1;

c. Whether Defendant was unjustly enriched by its acts and omissions at the expense of the Plaintiff and the class;

d. Whether Plaintiff and the putative class sustained damage and loss thereby;

e. The scope, extent and measure of damages and equitable relief that should be awarded;

f. Whether Defendant's acts and omission entitle Plaintiff and the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit;

g. Whether Plaintiff and the Class are entitled to injunctive relief; and

h. Whether Plaintiff and the Class are entitled to declaratory relief.

## COUNT I
### Violation of N.J.S.A. 56:8-35. 1

34. Plaintiff, on behalf of himself and all others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

12

35. Defendant NFL is the provider of all tickets to the Super Bowl.

36. As a matter of historical practice, the NFL withholds all but a tiny percentage of its tickets to the Super Bowl for sale to the general public.

37. Such practice is in contravention of N.J.S.A. 56:8-35.1, which prohibits withholding any amount of tickets more than 5 percent (5%) from the public.

38. Violation of this statute is a *per se* violation of the CFA and the NFL is strictly liable to the Plaintiff and the Class for such violations.

39. Plaintiff and class members suffered ascertainable losses consisting of the purchase price of the ticket in excess of the face value, and accordingly were harmed by NFL's conduct in violation of the CFA.

WHEREFORE, Plaintiff demands judgment against the Defendant, on his behalf and that of similarly situated class members for all relief available pursuant to the CFA and other relief as this Court deems just and proper.

## COUNT TWO
### Unjust Enrichment

40. Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth in length.

41. Defendant's acts and omissions allowed the Defendant to gain millions of dollars in profits that would not have been gained, but for Defendant's acts and omissions.

42. Plaintiff and the putative Class paid an amount for tickets that exceed the value of the tickets as a result of Defendant's acts and omissions.

43. Plaintiff and the putative Class suffered damages due to the Defendant' acts and omissions as alleged herein.

44. Defendant has been unjustly enriched as a result of Defendant's unlawful acts.

45. Defendant lacks legal justification for its acts and omission alleged herein at Plaintiff and the putative Class' expense.

WHEREFORE, Plaintiff demands judgment against the Defendant NFL, on his own behalf and that of similarly situated class members, for disgorgement of the monies by which the Defendant was unjustly enriched, compensatory damages including interest, punitive damages, attorneys' fees, all damages pursuant to the CFA, costs of suit and other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands trial by jury as to all issues in the above matter.

## DESIGNATION OF TRIAL COUNSEL

Bruce H. Nagel, Esq., is hereby designated as trial counsel for the within matter.

**NAGEL RICE LLP**
*Attorneys for Plaintiff and Putative Class*

_____
Bruce H. Nagel, Esq.
Diane E. Sammons, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Dated:   January 6, 2014