# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSH FINKELMAN, BEN HOCH-PARKER on behalf of themselves and the Putative class, <br><br> Plaintiffs, <br><br> -against- <br><br> NATIONAL FOOTBALL LEAGUE, NFL VENTURES, L.P., NFL PROPERTIES, LLC, NFL VENTURES, INC., NFL ENTERPRISES LLC, <br><br> Defendants. | CIVIL ACTION <br><br> 14-CV-00096 (PGS) (DEA) <br><br> *(Document Electronically Filed)* |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Karen A. Confoy
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey  08648
Telephone: (609) 896-3600
Facsimile: (609) 896-1469
kconfoy@foxrothschild.com

Jonathan D. Pressment
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York  10112
Telephone:  (212) 918-8961
Facsimile:   (212) 884-9561
Jonathan.Pressment@haynesboone.com
*Admitted Pro Hac Vice*

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................. 1

Factual Background Relevant to the Motion ............................................. 5

Argument...................................................................................................... 11

I.    STANDARDS APPLICABLE TO THE INSTANT MOTION ................... 11

II.   PLAINTIFF HOCH-PARKER'S CLAIMS SHOULD BE DISMISSED
      BECAUSE HOCH-PARKER LACKS STANDING AND, IN ANY
      EVENT, MAY NOT AVAIL HIMSELF OF THE NJCFA ......................... 13

III.  PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO
      DEMONSTRATE A *PRIMA FACIE* CLAIM FOR RELIEF UNDER
      THE NJCFA ..................................................................................... 16

      A.  Plaintiffs Fail To Allege Facts Sufficient To Establish That
          Defendants Have Engaged In An Unlawful Practice. ..................... 17

          1.  Plaintiffs Fail to Allege Facts Sufficient to Establish That
              Defendants "Withhold" Super Bowl Tickets ........................... 20

          2.  Section 35.1 Does Not Apply to the Facts Alleged Because
              Defendants Do Not Release Super Bowl Tickets For Sale to
              "the General Public".............................................................. 24

          3.  Even Assuming That NFL Lottery Tickets Are Released for
              Sale to the "General Public" Plaintiffs Have Failed to Allege
              Facts Sufficient to Demonstrate That the NFL Violated
              Section 35.1 with Respect to "Those Tickets".......................... 28

      B.  Plaintiffs Fail to Allege Facts Sufficient to Establish the Requisite
          Element of Ascertainable Loss. .................................................. 29

      C.  Plaintiffs Fail to Allege Facts Sufficient to Establish the Element of
          Causation. ............................................................................... 32

i

IV.   PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT AN UNJUST ENRICHMENT CLAIM........................................................... 34

Conclusion................................................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)..................................................................... 12

*Babbitt v. UFW Nat'l Union*,
     442 U.S. 289 (1979)..................................................................... 19

*Baraka v. McGreevey*,
     481 F.3d 187 (3d Cir. 2007).......................................................... 20

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007)......................................................... 5, 11, 12

*Bergen Commercial Bank v. Sisler*,
     157 N.J. 188 (1999)...................................................................... 18

*Castro v. NYT Television*,
     370 N.J. Super. 282 (App. Div. 2004) ......................................... 34

*Cetel v. Kirwan Fin. Grp., Inc.*,
     460 F.3d 494 (3d Cir. 2006).......................................................... 27

*Ciccone v. World Sav. Bank, F.S.B.*,
     12-cv-01661, 2013 U.S. Dist. LEXIS 68973 (D.N.J. May 15, 2013)
     ........................................................................................ 13, 17, 26

*Ciser v. Nestle Waters N. Am., Inc.*,
     11-cv-5031, 2013 U.S. Dist. LEXIS 12927 (D.N.J. Jan. 30, 2013) ................. 12

*Cooper v. Samsung Elecs. Am., Inc.*,
     374 Fed. Appx. 250 (3d Cir. 2010)........................................... 15, 16

*Cox v. Sears Roebuck & Co.*,
     138 N.J. 2 (1994)........................................................................... 17

*Dandana, LLC v. MBC FZ-LLC*,
     507 Fed. Appx. 264 (3d Cir. 2012)............................................... 36

*DeHart v. US Bank, N.A. ND,*
   811 F. Supp. 2d 1038 (D.N.J. 2011) ................................................................. 18

*Diamond Life Lighting MFG (HK) Ltd. v. Picasso Lighting Inc.,*
   10-161, 2010 U.S. Dist. LEXIS 132582 (D.N.J. Dec. 14, 2010) ...................... 17

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.,*
   784 F. Supp. 2d 508 (D.N.J. 2011) ................................................................... 33

*In re Estate of Post,*
   282 N.J. Super. 59 (App. Div. 1995) ................................................................ 18

*Green v. Green Mt. Coffee Roasters, Inc.,*
   279 F.R.D. 275 (D.N.J. 2011) .............................................................. 13, 14, 35

*Harvey v. GSAC Partners, Inc.,*
   L-736-03, at p. 9 (N.J. Super. Ct., Monmouth Cty. Mar. 21, 2003)
   .......................................................................................... 20, 21, 22, 23

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck
& Co., Inc.,*
   192 N.J. 372 (N.J. 2007) ................................................................................... 31

*Kanter v. The Equitable Life Assurance Soc'y of the United States,*
   No. 07-4361, 2011 U.S. Dist. LEXIS 35413 (D.N.J. Mar. 31, 2011)
   .......................................................................................... 26, 27, 28

*Koronthaly v. L'Oreal USA, Inc.,*
   07-CV-5588, 2008 U.S. Dist. LEXIS 59024 (D.N.J. July 25, 2008) ............... 13

*Lieberson v. Johnson & Johnson Consumer Cos.,*
   865 F. Supp. 2d 529 (D.N.J. 2011) ................................................................... 14

*Lind v. New Hope Prop., LLC,*
   09-3757, 2010 U.S. Dist. LEXIS 36672 (D.N.J. Apr. 13, 2010)...................... 26

*Marascio v. Campanella,*
   298 N.J. Super. 491 (App. Div. 1997) .............................................................. 27

*Marcus v. BMW of N. Am., LLC,*
   687 F.3d 583 (3d Cir. 2012).............................................................................. 30

iv

*Marshak v. Treadwell,*
    240 F.3d 184 (3d Cir. 2001) ................................................................. 19

*Mayer v. Belichick,*
    No. 07-4671, 2009 U.S. Dist. LEXIS 23052 (D.N.J. Mar. 23,
    2009), *aff'd,* 605 F.3d 223 (3d Cir. 2010) ........................................ 35

*Mid-South Grizzlies v. National Football League,*
    720 F.2d 772 (3d Cir. 1983) .................................................................6

*Muti v. Schmidt,*
    96 Fed. Appx. 69 (3d Cir. 2004) ............................................... 21, 25

*N.J. Citizen Action v. Schering-Plough Corp.,*
    367 N.J. Super. 8 (App. Div. 2003) ................................................... 31

*Nelson v. Xacta 3000, Inc.,*
    No. 08-5426, 2009 U.S. Dist. LEXIS 109580 (D.N.J. Nov. 23, 2009) ............. 35

*Nobile v. Ford Motor Co.,*
    10-1890, 2011 U.S. Dist. LEXIS 26766 (D.N.J. Mar. 14, 2011) .................... 32

*Oshinsky v. New York Football Giants, Inc.,*
    09-cv-1186, 2009 WL 4120237 (D.N.J. Nov. 17, 2009) .................................. 17

*Pacholec v. Home Depot USA, Inc.,*
    No. 06-cv-827, 2006 U.S. Dist. LEXIS 68976 (D.N.J. Sept. 25, 2006) ............ 12

*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................................... 12

*In re Passaic Cnty. Utils. Auth.,*
    164 N.J. 270 (2000) ............................................................................... 17

*Quigley v. Esquire Deposition Servs., LLC,*
    409 N.J. Super. 69 (App. Div. 2009) ................................................. 31

*Sauro v. L.A. Fitness Int'l, LLC,*
    No. 12-3682, 2013 U.S. Dist. LEXIS 58144 (D.N.J. Feb. 13, 2013) ............... 34

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
    06-cv-0774, 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ........... 30, 31

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
  No. 06-cv-5774, 2010 U.S. Dist. LEXIS 56621 (D.N.J. June 9,
  2010), *aff'd*, 678 F.3d 235 (3d Cir. 2012) ........................................... 34

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997) .................................................................. 26

*Shubert v. Nixon Amusement Co.*,
  83 N.J.L. 101 (N.J. Sup. Ct. 1912) ....................................................... 36

*Skeen v. BMW of N. Am., LLC*,
  13-cv-1531, 2014 U.S. Dist. LEXIS 9256 (D.N.J. Jan. 24, 2014) .................... 16

*Smith v. SBC Commc'ns., Inc.*,
  178 N.J. 265 (2004) ................................................................................ 29

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
  171 F.3d 912 (3d Cir. 1999) .................................................................. 35

*Swift v. Pandey*,
  No. 13-649, 2013 U.S. Dist. LEXIS 161590 (D.N.J. Nov. 13, 2013) .............. 34

*Tremco Can. Div., RPM Can. v. Dartronics, Inc.*,
  No. 13-1641, 2013 U.S. Dist. LEXIS 78164 (D.N.J. June 4, 2013) ................. 12

*Van Orman v. Am. Ins. Co.*,
  680 F.2d 301 (3d Cir. 1982) .................................................................. 36

*Vicencio v. Shanahan*,
  12-7560, 2013 U.S. Dist. LEXIS 25871 (D.N.J. Feb. 26, 2013) ..................... 19

**Rules and Statutes**

Fed. R. Civ. P. 8 ............................................................................................. 12

Fed. R. Civ. P. 12(b)(6) ........................................................................... 11, 13

N.J.S.A. § 1:1-1 ............................................................................................. 18

N.J.S.A. § 56:8-19 ......................................................................................... 17

N.J.S.A. § 56:8-35.1 ............................................................................... *passim*

N.J.S.A. § 56:8-38 ........................................................................................... 6

**Other Authorities**

*General Public Definition*, MACMILLIAN DICTIONARY,
   www.macmillandictionary.com/us/dictionary/american/the-
   general-public (last visited Jan. 15, 2014) ......................................... 24

*Withhold Definition*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY
   (9th ed. 1987) ....................................................................................... 22

*Withhold Definition*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY
   (11th ed. 2003) ..................................................................................... 20

Defendants National Football League (the "NFL"), NFL Ventures, L.P., NFL Properties, LLC, NFL Ventures, Inc. and NFL Enterprises (collectively, the "NFL Affiliates" and collectively with the NFL, "Defendants"), by and through their attorneys, Haynes and Boone LLP and Fox Rothschild LLP, respectfully submit this memorandum of law in support of their motion to dismiss the first amended complaint (the "Amended Complaint") filed in this action.

## Preliminary Statement

This putative class action is billed as an attempt to address alleged violations of the New Jersey Consumer Fraud Act (the "NJCFA") -- a statute that regulates the "practices of *ticket brokers* . . . who are involved in the business of reselling tickets of admission to places of entertainment within [New Jersey] and who charge premiums in excess of the price, plus taxes, printed on the tickets."[1]

In reality, the action represents a challenge to a law considerably older and more tested than the NJCFA -- that of supply and demand.  Plaintiffs -- a New Jersey resident ("Finkelman") who purportedly purchased Super Bowl tickets on the secondary market at prices above face value, and an Oregon resident ("Hoch-Parker") who allegedly, "researched the availability of tickets[,]" but "elected not to

---

[1] STATE OF N.J. ASSEMBLY CONSUMER AFFAIRS & REGULATED PROFESSIONS COMM., STATEMENT TO ASSEMBLY, No. 3958 (Dec. 13, 2001). (March 14, 2014 Declaration of Jonathan D. Pressment ("Pressment Decl."), Ex. A.)

pay [for them]" -- aim to attribute the prices of Super Bowl tickets on the secondary market to the NFL's ticket distribution polices rather than the overwhelming demand for tickets to one of the most popular sporting events in the world.

While there are numerous justifications warranting dismissal of Plaintiffs' Amended Complaint for failing to state a claim, at the outset, the action should be seen for what it is -- a strained attempt to stretch the NJCFA far beyond its obvious scope.  Plaintiffs do not contend that Defendants are ticket brokers or are in the business of reselling tickets -- they unquestionably *are not*.  Nor do Plaintiffs allege that Defendants charge a premium over the face value of Super Bowl tickets distributed by the NFL -- they indisputably *do not*.  Plaintiffs' attempt to misuse the NJCFA to recover a premium that Finkelman allegedly paid on the secondary market to a third-party for his Super Bowl tickets and a premium that Hoch-Parker admittedly "*elected not to pay*" should be dismissed out of hand.

Plaintiffs' specific complaint in this action is that the NFL purportedly violated Section 56:8-35.1 ("Section 35.1") of the NJCFA by not distributing enough Super Bowl tickets to the general public.  Section 35.1 provides as follows:

> It shall be an unlawful practice for a person, who has access to tickets to an event prior to the tickets' release for sale to the general public, to withhold those tickets from sale to the general public in an amount exceeding 5% of all available seating for the event.

N.J.S.A. § 56:8-35.1. Plaintiffs also allege that the NFL and the NFL Affiliates were unjustly enriched as a result of the sale of Super Bowl tickets on the secondary market.  These claims fail for several independent reasons.

As a threshold matter, Plaintiff Hoch-Parker lacks standing to assert any claims in this action because he did not purchase tickets to the Super Bowl and, even if he did, he is a resident of Oregon to whom the NJCFA does not apply.  On this basis alone, Hoch-Parker's NJCFA claim should be dismissed.

Yet, irrespective of who brings the NJCFA claim in this action, Plaintiffs' NJCFA claim warrants dismissal.  In order to set forth a *prima facie* claim for relief under the NJCFA, Plaintiffs must set forth factual allegations sufficient to demonstrate the elements of: (1) unlawful practices under the NJCFA; (2) ascertainable loss; and (3) causation.  Plaintiffs' NJCFA claim fails in all three respects.

*First*, Plaintiffs' allegations cannot -- and do not -- establish that the NFL or the NFL Affiliates engaged in an unlawful practice in violation of Section 35.1 of the NJCFA.  On the face of the Amended Complaint: (1) Section 35.1 only applies to tickets *withheld* by a person or entity and Plaintiffs do not allege that Defendants *withheld* tickets at all, rather, Plaintiffs concede that the NFL *distributed* all of the tickets for Super Bowl XLVIII; (2) Section 35.1 only applies to tickets that are released for sale to the "general public" and the NFL does not release Super Bowl

3

tickets for sale to the "general public" but, rather, as is set forth in the Amended

Complaint, distributes tickets to the NFL's teams, business partners and winners of

a special ticket lottery; and (3) the only tickets that Plaintiffs even allege were

released to the "general public" are those that the NFL made available through its

ticket lottery, and there are no allegations that the NFL withheld any of those

tickets from sale to the "general public."

*Second*, Plaintiffs are unable to demonstrate that they have suffered an

"ascertainable loss." Plaintiff Finkelman offers no allegations to suggest that he

did not receive precisely what he expected to receive in exchange for his purchase

price -- two tickets to Super Bowl XLVIII. Plaintiff Hoch-Parker did not expend

any money whatsoever. Moreover, Plaintiffs' claim that they suffered an

"ascertainable loss" due to general price inflation on the secondary market cannot

stand where New Jersey courts routinely reject theories of "ascertainable loss"

based solely on alleged price inflation outside of the securities law context.

*Third*, the Amended Complaint fails to offer allegations sufficient to

demonstrate the requisite element of causation -- that Defendants caused Plaintiffs'

alleged loss. Neither Plaintiff alleges that he made any attempt to procure tickets

at face value through the NFL's ticket lottery. Accordingly, neither Plaintiff can

demonstrate that their alleged loss was unavoidable, much less caused by

Defendants' actions. In fact, none of Plaintiffs' allegations even suggest that they

4

could have avoided paying above face value for Super Bowl tickets on the secondary market even if the NFL had distributed all Super Bowl tickets to the general public for free.

Finally, Plaintiffs' claim for unjust enrichment must fail because there are no allegations that Plaintiff Finkelman purchased his Super Bowl tickets from Defendants or that Plaintiff Hoch-Parker purchased tickets at all. Moreover, Finkelman's unjust enrichment claim cannot stand in the presence of a valid and enforceable contract -- his Super Bowl XLVIII ticket.

Accordingly, dismissal of the Amended Complaint is warranted.

## **Factual Background Relevant to the Motion**[2]

A.   <u>The Parties</u>

Plaintiff Finkelman is purportedly an individual residing in New Brunswick, New Jersey. (Pressment Decl., Ex. B (Amended Complaint), ¶ 7.) Plaintiff Hoch-Parker is purportedly a citizen of the State of Oregon who resides in Eugene, Oregon. (*Id.*, ¶ 8.)

Defendant NFL is a recognized 501(c)(6) unincorporated association with its

---

[2]   The facts relevant to this motion are derived from the Amended Complaint, Pressment Decl., Ex. B, and from other undisputed facts and information derived from the pleadings and other documents and/or statutory provisions referenced therein. While Defendants do not admit the truth of the matters asserted in the Amended Complaint, for the purposes of this Motion, all well-pled factual allegations derived from the Amended Complaint are accepted as true. *See infra* at 11; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

principal place of business located at 345 Park Avenue, New York, New York.

(*Id.* at ¶¶ 9, 21-22.)  The NFL was granted tax-exempt status by Congress in 1989.[3]

(*Id.* at ¶ 21.)  The NFL has "primary, [or] ultimate . . . responsibility for

supervising, overseeing, managing and insuring the distribution and sale of tickets

to the Super Bowl."[4]  (*Id.* at ¶ 9.)

---

[3]   The Third Circuit recognized the NFL as a not-for-profit in 1983.  *See Mid-South Grizzlies v. National Football League*, 720 F.2d 772, 775 (3d Cir. 1983) ("The NFL is a not-for-profit business league, qualified for exemption from federal income tax under section 501(c)(6) of the Internal Revenue Code.") Plaintiffs expend considerable effort in the Amended Complaint to argue against the NFL's status as a not-for-profit organization.  (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 21-26.)  Plaintiffs' efforts in this regard are presumably motivated by their awareness that Section 38 of the NJCFA renders nonprofits exempt from Section 35.1's provisions.  *See* N.J.S.A. § 56:8-38.  The NFL need not -- and will not -- engage Plaintiffs' on this issue.  As set forth herein, Plaintiffs' claims fail for numerous other independent reasons.

[4]   Plaintiffs assert that the NFL "has primary, ultimate and/or *in the alternative*, joint responsibility for supervising, overseeing, managing and insuring the distribution and sale of tickets to the Super Bowl."  (Pressment Decl., Ex. B (Amended Complaint), ¶ 9.)  The NFL concedes that it alone is responsible for the distribution of Super Bowl tickets.  Indeed, the Amended Complaint's allegations relating to the NFL's distribution of Super Bowl tickets are identical to those set forth in the original Complaint from which the NFL Entities were excluded.  *Compare* Pressment Decl., Ex. B (Amended Complaint), ¶¶ 18-19, *with* Ex. C (Complaint), ¶¶ 11-12, 17.)   In neither instance do Plaintiffs assert that any entity other than the NFL allocated or distributed tickets to Super Bowl XLVIII.  Moreover, on the face of the Amended Complaint, Plaintiffs acknowledge that none of the Defendants apart from the NFL have responsibility for the distribution of Super Bowl tickets.  Plaintiffs do not allege that NFL Ventures distributes Super Bowl tickets, but rather that it "advertises, promotes, and markets the NFL and its member teams." (Pressment Decl., Ex. B (Amended Complaint), ¶ 10.)  Plaintiffs do not allege that NFL Properties distributes Super Bowl tickets, but rather that it "provides Super Bowl

Defendant NFL Ventures, L.P., is a Delaware limited partnership with a principal place of business located at 345 Park Avenue, New York, New York. According to the Amended Complaint, NFL Ventures, L.P., "advertises, promotes, and markets the NFL and its member teams." (*Id.* at ¶ 10.)

Defendant NFL Properties, LLC is a Delaware limited liability company with a principal place of business at 345 Park Avenue, New York, New York.[5] (*Id.* at ¶ 11.) According to the Amended Complaint, NFL Properties "provides Super Bowl hospitality and travel related services." (*Id.*)

Defendant NFL Ventures, Inc. is a Delaware company with its principal place of business at 345 Park Avenue, New York, New York. (*Id.* at ¶ 12.) Plaintiff does not allege facts demonstrating that NFL Ventures, Inc. plays any role with respect to the sale or distribution of Super Bowl tickets. (*Id.*)

---

hospitality and travel related services." (*Id.* at ¶ 11.) And, finally, the Amended Complaint is bereft of any factual allegations to suggest that NFL Ventures Inc. or NFL Enterprises play any role in the distribution or allocation of Super Bowl tickets whatsoever. (*Id.* at ¶¶ 12, 14.)

[5] By Order dated February 24, 2014 [ECF 18] the Court "So Ordered" a Stipulation and Order presented by the parties pursuant to which, *inter alia*, former Defendant NFL On Location was dismissed from this action. NFL On Location operates as part of Defendant NFL Properties and, according to the Amended Complaint, sells "ticket *packages*" to the Super Bowl -- a function consistent with Plaintiffs' allegations that NFL Properties "provides Super Bowl hospitality and travel related services." (Pressment Decl., Ex. B (Amended Complaint), ¶ 11.) Plaintiffs do not allege that the "ticket packages" offered by NFL On Location were withheld from sale to people who purchased packages from NFL On Location.

Defendant NFL Enterprises LLC is a Delaware limited liability company with its principal place of business at 345 Park Avenue, New York, New York. (*Id.* at ¶ 14.)  Plaintiff does not allege facts demonstrating that NFL Enterprises LLC plays any role with respect to the sale or distribution of Super Bowl tickets. (*Id.*)

B.    The Distribution of Super Bowl XLVIII Tickets

The Super Bowl is one of the most popular and iconic sporting events of the year.  (*Id.* at ¶ 1.)   According to the Amended Complaint, the NFL distributed one percent (1%) of the tickets to Super Bowl XLVIII, at face value, to winners of a random drawing (the "NFL Lottery") conducted by the NFL from entries submitted by fans between February and June 2013.[6]  The remaining tickets to Super Bowl XLVIII were distributed by the NFL as follows: (1) five percent (5%) of the tickets were distributed to the host team; (2) seventeen and a half percent (17.5%) of the tickets were distributed to each of the two teams participating in the Super Bowl; (3) thirty-five percent (35%) of the tickets were split evenly among the remaining twenty-nine teams (with each getting 1.2% of the tickets); and (4) twenty-five

---

[6]   Although Plaintiff asserts that entries for the random drawing are accepted between February and March in the year preceding the Super Bowl, the article on which the Amended Complaint relies for these allegations states that entries "are accepted between Feb. 1 and June 1 of the year preceding the game in question."  (*Id.* at ¶ 18, n. 1.)

percent (25%) of the tickets were distributed to companies, broadcast networks,

media sponsors, and the host committee.  (*Id.* at ¶¶ 18-19.)

C.     Plaintiff Finkelman's Purchase Of Two Tickets To Super Bowl XLVIII

On December 30, 2013, Plaintiff Finkelman purportedly purchased two

tickets to Super Bowl XLVIII.  (*Id.* at ¶ 31.)  There is no allegation that Finkelman

attempted to purchase his tickets at face value through the NFL Lottery.  Rather,

Finkelman elected to purchase his tickets on the secondary market at a cost of Two

Thousand Dollars ($2,000) per ticket -- a price that Finkelman claims exceeds the

face value of the tickets.  (*Id.* at ¶ 32.)

D.     Plaintiff Hoch-Parker Elected *Not* To Purchase Super Bowl Tickets

In or about November or December of 2012 -- more than a year before

Super Bowl XLVIII was scheduled to be played -- Plaintiff Hoch-Parker

purportedly "researched the availability of tickets for [Super Bowl XLVIII]."  (*Id.*

at ¶ 34.)  Hoch-Parker alleges that "[h]e needed five tickets" for Super Bowl

XLVIII, but "*elected* not to pay [for tickets]" after learning of their price on the

secondary market.  (*Id.* at ¶¶ 33-36.)  As with Finkelman, Hoch-Parker does not

allege that he attempted to purchase tickets at face value through the NFL Lottery.

E.   Procedural History and Plaintiffs' Claims

On January 6, 2014, mere days after Finkelman purportedly purchased his tickets to Super Bowl XLVIII, he filed the instant putative class action.[7]  The original complaint (the "Complaint") asserted two claims for relief against a single defendant, the NFL, in connection with Finkelman's alleged purchase of tickets for Super Bowl XLVIII.  (Pressment Decl., Ex. C.)

On February 11, 2014, Plaintiffs filed the Amended Complaint by which Hoch-Parker was added as a plaintiff and the NFL Affiliates were added as defendants.  In all other respects, the Complaint and the Amended Complaint are nearly identical and assert the very same two causes of action against Defendants.

Plaintiffs' first claim arises from Defendants' alleged violation of Section 35.1 of the NJCFA -- a statute that addresses the "practices of ticket brokers . . . who are involved in the business of reselling tickets of admission to places of entertainment within [New Jersey] and who charge premiums in excess of the price, plus taxes, printed on the tickets."[8]

---

[7]   Plaintiffs purport to bring these claims on their own behalf and on the behalf of "all persons who paid for, or will pay for or elected not to pay for tickets to Super Bowl XLVIII in excess of the printed ticket price."  (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 37-38.)  The NFL reserves any and all rights to oppose Plaintiffs' request for class certification at the appropriate time.

[8]   STATE OF N.J. ASSEMBLY CONSUMER AFFAIRS & REGULATED PROFESSIONS COMM., STATEMENT TO ASSEMBLY, No. 3958 (Dec. 13, 2001) (Pressment Decl., Ex. A); see also Statement of Assemblyman Jeffrey W. Moran, Assembly, No.

Plaintiffs also assert a claim for unjust enrichment by which they allege that Defendants' "acts and omissions allowed the Defendants to gain millions of dollars in profits that would not have been gained, but for Defendants' acts and omissions." (Pressment Decl., Ex. B (Amended Complaint), ¶ 52.)

Against this backdrop Defendants move to dismiss the Amended Complaint.

## Argument

## I.

## STANDARDS APPLICABLE TO THE INSTANT MOTION

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must demonstrate grounds for relief beyond mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Rather, a complaint must set forth "[f]actual allegations [that are] . . . enough to raise a right to relief above the speculative level." *Id*. Otherwise, "a plaintiff with 'a largely groundless claim' [could] . . . 'take up the time of a number of other people with the right to do so representing an *in terrorem* increment of the settlement value.'" *Id*. at 558 (internal citations omitted).

While well-pled factual allegations of a complaint are to be accepted as true for purposes of a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

2723 (Nov. 29, 2001); N.J. P.L. 2001, Ch. 394, Senate, No. 2723, at 7:28-29 (Jan. 8, 2002) (Pressment Decl., Ex. D.).

*Twombly*, 550 U.S. at 555 (internal quotation marks omitted) (alteration in original) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Ciser v. Nestle Waters N. Am., Inc.*, 11-cv-5031, 2013 U.S. Dist. LEXIS 12927, at *3 (D.N.J. Jan. 30, 2013).

Additionally, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must do more than present a "conceivable" claim -- it must provide "enough facts to state a claim to relief that is *plausible* on its face." *Twombly*, 550 U.S. at 570 (emphasis added); s*ee also Iqbal*, 556 U.S. at 697.

Further, where, as here, a complaint asserts claims pursuant to the NJCFA, the complaint "must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)." *Tremco Can. Div., RPM Can. v. Dartronics, Inc.*, No. 13-1641, 2013 U.S. Dist. LEXIS 78164, at *4 (D.N.J. June 4, 2013); *Pacholec v. Home Depot USA, Inc.*, No. 06-cv-827, 2006 U.S. Dist. LEXIS 68976, at *4 (D.N.J. Sept. 25, 2006). Where claims are asserted as part of a putative class action, "an individually named plaintiff must satisfy Rule 9(b) independently." *Pacholec*, 2006 U.S. Dist. LEXIS 68976, at *4.

In resolving a motion to dismiss brought pursuant to Rule 12(b)(6), courts may consider allegations of the complaint, as well as "(1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint." *Ciccone v. World Sav. Bank, F.S.B.*, 12-cv-01661, 2013 U.S. Dist. LEXIS 68973, at \*21 (D.N.J. May 15, 2013).

**II.**

**PLAINTIFF HOCH-PARKER'S CLAIMS SHOULD BE DISMISSED BECAUSE HOCH-PARKER LACKS STANDING AND, IN ANY EVENT, MAY NOT AVAIL HIMSELF OF THE NJCFA**

As an initial matter, Plaintiff Hoch-Parker's claims must be dismissed because he lacks standing to assert them.  In order to have standing, Hoch-Parker must demonstrate: (1) that he suffered "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[;]" (2) a "causal connection between the injury and the conduct complained of[;]" and (3)  "that the injury will be redressed by a favorable decision." *Green v. Green Mt. Coffee Roasters, Inc.*, 279 F.R.D. 275, 279-80 (D.N.J. 2011) (alteration in original); *Koronthaly v. L'Oreal USA, Inc.*, 07-CV-5588, 2008 U.S. Dist. LEXIS 59024 (D.N.J. July 25, 2008) (internal citations omitted).

Hoch-Parker fails to meet any -- much less all three -- of the requirements for standing to assert claims in this action.  By his own admission, Hoch-Parker

13

has not suffered an injury in fact because he "elected not to [purchase Super Bowl tickets]." (Pressment Decl., Ex B (Amended Complaint), ¶ 35.) It would defy credulity to suggest that Hoch-Parker (or any individual) has "a legally protected interest" in the mere *potential* purchase of Super Bowl tickets. Thus, at best, Hoch-Parker's "injury" is "conjectural or hypothetical." *See Green*, 279 F.R.D. at 279. Any such "injury" is plainly not actionable. *Id.*

Further, it is well-settled that a plaintiff has no standing to bring an NJCFA claim when he did not actually purchase the product underlying his claim. *See Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 536-37 (D.N.J. 2011) (dismissing plaintiff's claims where plaintiff has standing to bring NJCFA claim only for "products which Plaintiff alleges that she purchased and used"); *Green*, 279 F.R.D. at 280 (dismissing NJCFA claim because "Plaintiff does not have standing to pursue a claim that products []he neither purchased nor used did not work as advertised."). Accordingly, Hoch-Parker lacks standing to assert his claims in this action.[9]

Hoch-Parker's claims should also be dismissed because, as a resident of Oregon, the lone allegation that he considered purchasing Super Bowl tickets does

---

[9] Because Hoch-Parker cannot possibly demonstrate that he has suffered an injury in fact or any causal connection between Defendants' actions and his alleged injury (*see* Section III.C., below), the NFL need not address the question of whether the alleged injury will "be redressed by a favorable decision."

not grant him standing to assert claims under the NJCFA.  Indeed, the Third

Circuit has applied the following factors in determining whether the NJCFA may

be utilized by an out-of-state plaintiff:

> (a)  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b)  the place where the plaintiff received the representations,
>
> (c)  the place where the defendant made the representations,
>
> (d)  the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e)  the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f)  the place where the plaintiff is to render performance under a contract which he has been induced to enter by defendant's false representations.

*Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 255 (3d Cir. 2010).

Here, the factors articulated by the Third Circuit in *Cooper* weigh against

Hoch-Parker's attempted use of the NJCFA.  Neither Hoch-Parker nor any of the

Defendants are based in New Jersey.  To the extent Hoch-Parker received any

representations from the NFL or acted at all in reliance upon any alleged

representations by the NFL (and he does not allege that he did), such

representations would have been received and acted upon by Hoch-Parker in

Oregon.  In fact, the only conceivable connection that Hoch-Parker or either of his

claims have to New Jersey is the fact that Super Bowl XLVIII was held in New Jersey. However, Hoch-Parker's mere thoughts of attending an event in New Jersey cannot possibly confer standing upon him to bring claims under the NJCFA.

Indeed, New Jersey courts routinely dismiss NJCFA claims brought by out-of-state plaintiffs absent a showing that the claims and claimants have strong ties to New Jersey. *See, e.g.*, *Cooper*, 374 Fed. Appx. at 255 ("Cooper, who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute. The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters."); *Skeen v. BMW of N. Am., LLC*, 13-cv-1531, 2014 U.S. Dist. LEXIS 9256, at *17-18 (D.N.J. Jan. 24, 2014) (same). Hoch-Parker can make no such showing.

Accordingly, Hoch-Parker's claims must be dismissed.

## III.

## PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO DEMONSTRATE A *PRIMA FACIE* CLAIM FOR RELIEF UNDER THE NJCFA

"To state a case under the [NJ]CFA, a plaintiff must demonstrate three elements: (1) an unlawful practice by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct

and the plaintiff's ascertainable loss."[10] *Ciccone*, 2013 U.S. Dist. LEXIS 68973, at

*29; *Diamond Life Lighting MFG (HK) Ltd. v. Picasso Lighting Inc.*, 10-161, 2010

U.S. Dist. LEXIS 132582, at *11-12 (D.N.J. Dec. 14, 2010); *Cox v. Sears*

*Roebuck & Co.*, 138 N.J. 2, 24 (1994); *see also* N.J.S.A. § 56:8-19.

The Amended Complaint fails to include allegations sufficient to

demonstrate the existence of *any* of these requisite elements.

## A. Plaintiffs Fail To Allege Facts Sufficient To Establish That Defendants Have Engaged In An Unlawful Practice.

The only unlawful practice alleged in the Amended Complaint is a purported

violation of Section 35.1 of the NJCFA arising from the NFL's distribution of

tickets for Super Bowl XLVIII.  Plaintiffs' NJCFA claim fails because Plaintiffs

have not -- and cannot -- plead facts sufficient to establish a violation of Section

35.1. *See Oshinsky v. New York Football Giants, Inc.*, 09-cv-1186, 2009 WL

4120237 at *7 (D.N.J. Nov. 17, 2009) (NJCFA claim requires a showing that, *inter*

*alia*, defendant engaged in an unlawful practice in violation of the NJCFA).

It is well-settled that the starting point in "any statutory analysis is to

examine the statute's plain language as the clearest indication of its meaning." *In*

---

[10]  N.J.S.A. § 56:8-19, which provides for a private right of action under the
NJCFA, restricts potential claimants to those "who suffer[] any ascertainable
loss of moneys or property, real or personal, *as a result of the use or*
*employment by another person of any method, act, or practice declared*
*unlawful under this act* or the act hereby amended and supplemented. . . ."
N.J.S.A. § 56:8-19.

re *Passaic Cnty. Utils. Auth.*, 164 N.J. 270, 299 (2000)*; see also DeHart v. US Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1052-53 (D.N.J. 2011). "Where the statutory language is 'clear and unambiguous,' courts will implement the statute as written without resort to judicial interpretation, rules of construction, or extrinsic matters." *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 202 (1999) (citing *In re Estate of Post*, 282 N.J. Super. 59, 72 (App. Div. 1995)).

Moreover, where a statute does not define a given word or phrase, a court interpreting the statute must interpret the word or phrase according to its ordinary and well understood meaning. *See DeHart*, 811 F. Supp. 2d at 1052-53. Thus, "the Court will be limited in its interpretation of the statute to its understanding of the *plain meaning* of the statute's language. . . ." *Id.* (emphasis added) (citing N.J.S.A. § 1:1-1.)

Here, the language of Section 35.1 provides as follows:

> It shall be an unlawful practice for a person, who has access to tickets to an event prior to the tickets' release for sale to the general public, to withhold those tickets from sale to the general public in an amount exceeding 5% of all available seating for the event.

N.J.S.A. § 56:8-35.1.

The plain meaning of Section 35.1 prohibits any person or entity having pre-sale access to tickets *for sale to the general public*, from *withholding* a portion of *those* tickets (*i.e.*, tickets to be sold to the general public) in an amount exceeding

18

5% of all available seating for the event.[11]  Plaintiffs do not allege facts sufficient to demonstrate that Defendants have run afoul of Section 35.1's restrictions.

On the face of the Amended Complaint, Plaintiffs' NJCFA claim must be rejected for at least three reasons: (1) there is no allegation that Defendants withheld any tickets to Super Bowl XLVIII; (2) Section 35.1 only applies to tickets that are earmarked for "release for sale to the *general public*" and the NFL did not "release for sale" Super Bowl XLVIII tickets to the "*general public*[;]" and (3) even accepting Plaintiffs' assertion that the NFL distributed "one percent (1%)" of Super Bowl XLVIII tickets for sale to the "*general public*" through the NFL Lottery, Plaintiffs do not allege that the NFL withheld any of "*those*" tickets from sale to the "*general public*."

---

[11]  Plaintiff cannot credibly argue that Section 35.1 is ambiguous.  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001). "Where [a court] find[s] that the statutory language has a clear meaning, [the court] need not look further." *Id.*; *see also Vicencio v. Shanahan*, 12-7560, 2013 U.S. Dist. LEXIS 25871, at *8 (D.N.J. Feb. 26, 2013).  Here, the meaning of Section 35.1's language is clear.  That Plaintiff may attempt to cast ambiguity onto the language of Section 35.1 is of no avail.  "[A]s every attorney knows, *any* statutory provision can be made ambiguous through a sufficiently assiduous application of legal discrimination." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 315-16 (1979) (Brennan, J., concurring in part and dissenting in part) (emphasis in original).

1.   ***Plaintiffs Fail to Allege Facts Sufficient to Establish That Defendants "Withhold" Super Bowl Tickets***

In order to demonstrate that Defendants have violated Section 35.1 of the NJCFA, Plaintiffs first bear the burden of alleging facts sufficient to demonstrate that Defendants "*withhold*" Super Bowl tickets. *See Harvey v. GSAC Partners, Inc.*, L-736-03, at p. 9 (N.J. Super. Ct., Monmouth Cty. Mar. 21, 2003) (Pressment Decl., Ex. F.)  Plaintiffs do not -- and cannot -- make any such allegation.

To begin, because the NJCFA does not define the word "withhold" the Court is bound to interpret the term according to its plain and ordinary meaning. *See Baraka v. McGreevey*, 481 F.3d 187, 206 (3d Cir. 2007); *Harvey*, L-736-03, at  p. 5. (Pressment Decl., Ex. F.) Webster's definition of "withhold" is: "(1) to hold back from action; (2) (archaic) to keep in custody; (3) to refrain from granting, giving or allowing; (4) to deduct (withholding tax) from income." *Withhold Definition*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003).

Given the plain meaning of the word "withhold," Plaintiffs cannot -- and do not -- allege that Defendants "withhold" Super Bowl tickets *at all*.  To the contrary, on the face of the Amended Complaint, Plaintiffs concede that the NFL *distributes* one hundred percent of its tickets as follows: (1) "*one percent (1%) of* [the NFL's] tickets . . . *are distributed* via a random drawing from entries submitted from February to March of the previous year[;]" (2) "[t]he remaining tickets *are distributed* with *seventy-five percent (75%)*, split among the thirty-two

(32) NFL teams. . .[and] [t]he remaining *twenty-five percent (25%)* . . . [are] *distribut[ed]* to companies, broadcast networks, media sponsors, the host committee and other league insiders."[12]  (Pressment Decl., Ex. B (Amended Complaint), ¶¶18-19) (emphasis added).)  Thus, Plaintiffs' own allegations demonstrate that the NFL did *not* "hold back[,]" "keep in custody[,]" or "refrain from granting, giving or allowing" *any* Super Bowl XLVIII tickets.

The fact that Plaintiffs take issue with the people and entities to which the NFL distributes Super Bowl tickets is of no consequence.  Section 35.1 may only be invoked, in the first instance, where tickets are actually "with[held.]"  On this point, the Monmouth County Superior Court's decision in *Harvey v. GSAC Partners, Inc.*, -- apparently, the only decision interpreting the meaning and scope of Section 35.1 to date -- is instructive.

In *Harvey*, the Superior Court of New Jersey, Law Division, Monmouth County, examined an action brought by the New Jersey Attorney General and Director of Consumer Affairs against Clear Channel Entertainment with respect to American Express presales for tickets to several Clear Channel concert events held

---

[12]  As detailed herein, Plaintiffs' bald assertions suggesting that the NFL Entities play any role in the distribution of Super Bowl tickets (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 1, 30, 46 and 47) are belied by more specific allegations of the Amended Complaint and are entitled to no credit whatsoever.  (*Id*. at ¶¶ 9-14, 18-19).  *See*, *e.g.*, *Muti v. Schmidt*, 96 Fed. Appx. 69, 74 n.2 (3d Cir. 2004).

at the PNC Bank Arts Center in New Jersey. *Harvey*, L-736-03 at p. 4. (Pressment Decl., Ex. F.) The plaintiffs in *Harvey* claimed that Clear Channel's American Express presale violated Section 35.1 of the NJCFA because the defendant's records revealed that, "during the American Express pre-sale more than five percent of tickets were withheld from sale to the general public in favor of American Express Cardholders. In many cases close to 50% of tickets were withheld from sale to the general public." *Id.* at p. 8. Clear Channel moved to dismiss on the pleadings.

The Superior Court granted Clear Chanel's motion to dismiss, finding that the pre-sale did not violate Section 35.1 because Clear Channel did not "withhold" any tickets:

> Clear Channel did not *withhold, hold back, keep in custody or refrain* from giving any tickets as part of its presale.[13]

*Id.* at p. 6 (emphasis added). The Superior Court specifically rejected the plaintiffs' attempts to "broadly redefine 'withhold'" concluding:

> Section 35.1 is part of the Ticket Resale Law, which is New Jersey's anti-ticket scalping law. In this context, no meaning of 'withhold' *other than its common dictionary* meaning furthers the object and policy of the statute."

---

[13]   The court in *Harvey* utilized the very same definition of "withhold" as the NFL offers herein. *See Harvey*, at p. 6 (citing *Withhold Definition*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (9th ed. 1987)).

*Id.*

Accordingly, the court in *Harvey* found that plaintiffs alleging violations of Section 35.1 bear the burden of demonstrating that tickets are actually *withheld* as follows:

> Nevertheless, Plaintiffs fail to address how Clear Channel can violate the aspect of not selling the tickets to the general public when it has not met the first standard found earlier in the statute concerning the 'withholding of tickets'. *One cannot fail to sell tickets to the general public if it has not withheld those same tickets.* . . . In order to find in Plaintiff's favor, Plaintiffs would have the Court disregard the critical language of the statute that tickets must be 'withheld' as a <u>sine</u> <u>qua</u> <u>non</u> to finding a violation.  But this Court is of the opinion that the standard set out in <u>N.J.S.A. 56:8-35.1</u>, <u>supra</u>, regarding 'withholding of tickets' cannot be disregarded because to do so would read out of the statute its very intent and purpose.

*Id.* at p. 9 (emphasis added).

Here, as in *Harvey*, Plaintiffs fail to allege facts sufficient to demonstrate the existence of "the first standard" of a Section 35.1 violation -- "the withholding of tickets" by Defendants.  *Id.*  Thus, Plaintiffs' NJCFA claim must be dismissed.

**2.    *Section 35.1 Does Not Apply to the Facts Alleged Because Defendants Do Not Release Super Bowl Tickets For Sale to "the General Public"***

Even if Plaintiffs offered sufficient allegations to demonstrate that the NFL or, to the extent relevant, the NFL Affiliates, withheld tickets for Super Bowl XLVIII -- and they do not -- Plaintiffs' NJCFA claim would still fail because Section 35.1 applies only to tickets "release[d] for sale *to the general public*." On the face of the Amended Complaint, neither the NFL, nor the NFL Affiliates release Super Bowl tickets for sale "*to the general public*."

Once again, Section 35.1 must be read according to the "plain meaning" of its terms. According to MacMillan's dictionary, the plain meaning of the phrase "general public" is "ordinary people in society" as opposed to people "who belong to a particular group." *General Public Definition*, MACMILLIAN DICTIONARY, www.macmillandictionary.com/us/dictionary/american/the-general-public (last visited Jan. 15, 2014).[14]

Macmillan offers the following example of "general public" in a sentence: "[t]he meeting is not open to the general public." *Id.* The example makes clear that the term "general public" refers to members of the public at large beyond those belonging to particular groups. For example, a meeting may be open to certain members of the public, such as board members of a company, while still being

---

[14]   Webster's Collegiate Dictionary does not include a definition for the term "general public."

closed to members of the "general public" who are not a part of the "particular group."

The fact that Section 35.1 pertains only to tickets intended for "release . . . to the *general public*" is significant.  The statute does *not* regulate ticket distribution practices with respect to *all* tickets for *all* events.  The statute only regulates practices with respect to tickets that are released for sale to *the general public*.  Yet, on the face of the Amended Complaint, neither the NFL, nor the NFL Entities release Super Bowl tickets *for sale to the general public*.

Rather, as Plaintiffs themselves allege, the NFL distributes Super Bowl tickets among three "particular groups": (1) winners of the NFL Lottery; (2) NFL teams; and (3) recipients of NFL tickets at companies, broadcast networks, media sponsors, and the host committee. (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 18-19.)  None of these "particular groups" qualify as members of the "general public."

Plaintiffs, of course, do not dispute that NFL teams and NFL business partners fail to qualify as the "general public."  Plaintiffs' claim, therefore, rests solely upon their assertion that tickets distributed through the NFL Lottery qualify as tickets distributed to the "general public."  (*Id*. at ¶¶ 1, 11.)  Plaintiffs' assertion is without merit because it is belied by more specific allegations of the Amended Complaint.  *Muti v. Schmidt*, 96 Fed. Appx. at 74 n.2 ("We will not accept

conclusory allegations set forth in a complaint, however, when those allegations are belied by the complaint's remaining factual allegations. Nor will we accept conclusory allegations when contradicted by documents incorporated in the pleadings."); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997); *Ciccone*, 2013 U.S. Dist. LEXIS 68973, at *33; *Lind v. New Hope Prop., LLC*, 09-3757, 2010 U.S. Dist. LEXIS 36672, at *22 (D.N.J. Apr. 13, 2010).

As set forth in the Amended Complaint, in order to even qualify to purchase Super Bowl tickets through the NFL Lottery individuals must first: (1) enter the NFL Lottery by the NFL's June deadline; (2) be selected as a winner of the NFL Lottery; and (3) exercise the option to purchase Super Bowl tickets through the NFL Lottery. (Pressment Decl., Ex. B (Amended Complaint), ¶ 18.) Accordingly, the tickets allocated to the NFL Lottery are *not* released to members of the "general public," but, rather, to people "who belong to a particular group" -- *winners of the NFL Lottery.*

The decision in *Kanter v. The Equitable Life Assurance Soc'y of the United States*, No. 07-4361, 2011 U.S. Dist. LEXIS 35413 (D.N.J. Mar. 31, 2011) further illustrates this point. In *Kanter* the court examined, *inter alia*, an NJCFA claim brought by the beneficiary of an estate of a woman killed by her ex-husband, a former dentist, to recover proceeds of an annuity contract entered into between the

26

decedent's ex-husband and the defendant-insurer as part of a retirement plan offered to American Dental Association group members. *Id.* at *1-2. The court dismissed the NJCFA claim, concluding that the NJCFA did not apply to the annuity at issue because "the [NJ]CFA only protects consumers of goods or services which are 'generally sold to *the public at large*'" and the plaintiff conceded that the annuity at issue was sold only to members of the American Dental Association. *Id.* at *30 (emphasis added) (citation omitted) (quoting *Marascio v. Campanella*, 298 N.J. Super. 491, 498 (App. Div. 1997)); *see also Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) ("[t]he entire thrust of the [NJCFA] is pointed to products and services sold to consumers in the popular sense").

Here, as in *Kanter*, the product at issue -- Super Bowl tickets --  is not released for sale by the NFL to the "*public at large*[,]" but, rather, only to the particular group of people who submit winning entries for the NFL Lottery and, as a result, elect to purchase Super Bowl tickets.  Moreover, the mere fact that Super Bowl tickets may eventually make their way onto the secondary market does not render the NFL liable for a violation of Section 35.1.  The language of the statute makes clear that a violation of the statute requires that the person or entity with access to event tickets prior to "the tickets' release for sale to the general public" *be the same person or entity* "to withhold those tickets from sale to the general

public . . . ."[15]  To the extent any tickets were "withheld" from sale on the

secondary market after the NFL already distributed those tickets, it would have

been secondary ticket sellers that were doing the "withhold[ing]" -- *not the NFL*.

Accordingly, for this reason as well, the NJCFA is inapplicable to the NFL's

distribution of Super Bowl tickets and Plaintiffs' NJCFA claim must be dismissed.

*See Kanter*, 2011 U.S. Dist. LEXIS 35413, at *30-32.

### 3. *Even Assuming That NFL Lottery Tickets Are Released for Sale to the "General Public" Plaintiffs Have Failed to Allege Facts Sufficient to Demonstrate That the NFL Violated Section 35.1 with Respect to "Those Tickets"*

The only Super Bowl tickets that Plaintiffs even arguably allege were

released for sale to the "general public" are those Super Bowl tickets that "[t]he

NFL allocated  . . . to the general public . . . via [the NFL Lottery]. . . ."[16]

(Pressment Decl., Ex. B (Amended Complaint), ¶ 18.)  Even if NFL Lottery tickets

---

[15] Indeed, to conclude otherwise would render any event organizer -- even those of private events -- subject to the provisions of Section 35.1 upon a showing that, at some point down the chain of commerce, tickets were sold on the open market.

[16] For this reason, even if Plaintiffs were to assert that the NFL or NFL Affiliates "withh[eld]" tickets that were allocated for distribution to "companies, broadcast networks, media sponsors, the host committee and other league insiders" (Pressment Decl., Ex. B (Amended Complaint), ¶ 12), the NFL would still not be in violation of Section 35.1.  By Plaintiffs' own admission, the NFL did not "release" *those* tickets "for sale to the general public[.]"  (*Id*. at ¶ 1 ("[the NFL and/or NFL Affiliates] only allocates [*sic*] a meager one percent of [Super Bowl] tickets *for release to the general public* through a lottery system . . . .").)

were deemed "release[d] for sale to the general public[,]" -- and they are not -- the Amended Complaint would still fail to state a claim under Section 35.1.

On its face, Section 35.1 is violated only in instances where a person or entity has access to tickets earmarked for *"release for sale to the general public"* and withholds *"those tickets"* in an amount exceeding 5% *of all available seating for the event.* N.J.S.A. § 56:8-35.1. Here, even accepting Plaintiffs' assertion that the NFL Lottery tickets are allocated for sale to the "general public," there are no allegations to suggest that the NFL "withhold[s]" any of *"those tickets"* (*i.e.*, NFL Lottery tickets) from sale to the lottery winners.

Moreover, even assuming, *arguendo*, that the Amended Complaint alleged that the NFL withheld certain tickets allocated to the NFL Lottery -- which it does not -- the amount withheld could never amount to the 5% of all available seating required to demonstrate a violation of Section 35.1. Plaintiffs affirmatively allege that the NFL allocates *a total* of 1% of Super Bowl tickets to the NFL Lottery. (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 1, 11.) Accordingly, Plaintiffs cannot demonstrate that the NFL's distribution of tickets through the NFL Lottery violates Section 35.1.

## B. Plaintiffs Fail to Allege Facts Sufficient to Establish the Requisite Element of Ascertainable Loss.

To state a private cause of action under the NJCFA, Plaintiffs must also present particularized facts evidencing an ascertainable loss. *See Smith v. SBC*

*Commc'ns., Inc.*, 178 N.J. 265, 274 (2004).  Mere conclusory allegations of ascertainable loss will not suffice.   *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 06-cv-0774, 2009 U.S. Dist. LEXIS 58900, at *110 (D.N.J. July 10, 2009).

Plaintiffs fail to allege facts sufficient to demonstrate the element of ascertainable loss.  To begin, Plaintiff Hoch-Parker cannot demonstrate that he suffered an ascertainable loss because he never purchased tickets to the Super Bowl and cannot demonstrate that he incurred any expense whatsoever.

Plaintiff Finkelman is also unable to demonstrate the requisite element of ascertainable loss.  To adequately plead an ascertainable loss Finkelman must do more than allege he expended money in order to purchase his Super Bowl tickets -- he must allege facts sufficient to demonstrate that he made a purchase and "received less than what was promised."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (internal quotation marks omitted).  Here, there are no allegations suggesting that Finkelman received anything less than what he expected to receive in exchange for the $4,000 he allegedly spent on the secondary market -- two tickets to Super Bowl XLVIII.

Instead, Plaintiffs aim to satisfy their burden to demonstrate an "ascertainable loss" with a theory of price inflation -- a claim that the NFL's alleged misconduct has caused the market price for Super Bowl tickets to be higher

than what it otherwise should have been.[17]   However, Plaintiffs' argument suffers

from a fatal flaw -- outside of the securities context, courts have consistently

rejected claims for alleged violations of the NJCFA premised on theories of price

inflation alone.  *See In re Schering-Plough*, 2009 U.S. Dist. LEXIS 58900, at *75-

80, *110-11 (dismissing NJCFA claim under Rule 12(b)(6) where plaintiffs relied

on a price inflation theory of ascertainable loss); *see also Int'l Union of Operating

Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391-92

(N.J. 2007); *Quigley v. Esquire Deposition Servs., LLC*, 409 N.J. Super. 69, 79-80,

(App. Div. 2009) (affirming dismissal of NJCFA claim and holding that "Plaintiff

has not cited any authority for his argument that a Consumer Fraud Act claim may

be stated solely by an allegation that the price of a product was excessive . . . .We

live in a capitalist society in which prices are ordinarily established by the

marketplace rather than by a government agency or the courts"); *N.J. Citizen

Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 16 (App. Div. 2003)

(affirming dismissal of NJCFA claim and holding that a price inflation theory has

"no place" in the NJCFA context).

---

[17]   *See* Pressment Decl., Ex. B (Amended Complaint) at ¶¶ 1-2, 11-13, 17-18, 20,
35-39.  Plaintiffs' showing of ascertainable loss relies on a single conclusory
allegation that, "Plaintiffs and class members suffered ascertainable losses
consisting of the purchase price of the ticket in excess of the face value. . . ."
(*Id.* at ¶ 39.)

Absent particularized factual allegations demonstrating that Plaintiffs have suffered an ascertainable loss, Plaintiffs' NJCFA claim must be dismissed. *See Nobile v. Ford Motor Co.*, 10-1890, 2011 U.S. Dist. LEXIS 26766, at *15 (D.N.J. Mar. 14, 2011).

### C.   Plaintiffs Fail to Allege Facts Sufficient to Establish the Element of Causation.

Plaintiffs' Amended Complaint also fails to present allegations sufficient to demonstrate the requisite element of causation. The gravamen of Finkelman's claim is that he paid more than face value for his tickets to Super Bowl XLVIII. (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 24-25.) The gravamen of Hoch-Parker's claim -- assuming, *arguendo*, that he has a valid claim to assert -- is that he elected not to purchase Super Bowl tickets due to the prices of tickets on the secondary market.

Putting aside the fact that Finkelman was not obligated to purchase tickets for the Super Bowl -- much less at a cost of $2,000 each -- and that Plaintiff Hoch-Parker elected not to purchase Super Bowl tickets at all, the Amended Complaint lacks any allegation that either Plaintiff was unable to purchase tickets at face value through the NFL Lottery (or otherwise).[18]  Absent any such allegations,

---

[18]  Plaintiffs' allegations regarding the NFL Lottery are taken from an article cited in the Amended Complaint. (Pressment Decl., Ex. B (Amended Complaint), ¶ 18, n.1; Ex. E.)  The article on which Plaintiffs rely was published on February 4, 2013 -- more than 10 months *prior* to Plaintiff Finkelman's purchase of his

Plaintiffs cannot demonstrate the requisite element of causation -- *i.e.*, that

Defendants caused them to suffer the alleged damages of which they complain.

Accordingly, Plaintiffs' claim that they were somehow "harmed by Defendants'

conduct in violation of the CFA" is speculative and their NJCFA claim is not

cognizable.  (*Id.*, ¶ 50); *see Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,

784 F. Supp. 2d 508, 530 (D.N.J. 2011) (NJCFA claim dismissed when "Plaintiffs'

theory of causation in this action is too speculative and attenuated to be

cognizable").

Further, even if Plaintiffs had entered the NFL Lottery and failed to win the

rights to purchase Super Bowl tickets, Plaintiffs would still be unable to

demonstrate the necessary element of causation.  By Plaintiffs' own admission, the

Super Bowl is "one of the most popular and iconic sporting events of the year."

(Pressment Decl., Ex. B (Amended Complaint) ¶ 1.)  There can be no question that

many more people desire to attend the Super Bowl each year than can be

accommodated at Super Bowl host stadiums.  Accordingly, even if the NFL

released Super Bowl tickets to the public for free, given the high demand for Super

Bowl tickets it is likely that large numbers of fans would be forced to pay in excess

_____

Super Bowl tickets and approximately 4 months *prior* to the deadline for the
submission of entries for the NFL Lottery.   Despite being armed with this
information, neither Plaintiff alleges that he was prevented from entering the
NFL Lottery or even attempted to enter the NFL Lottery by the deadline set
forth in the article.

of the face value of tickets in order to attend the game. That is not the fault of any unlawful conduct on the part of Defendants, it is the natural consequence of the Super Bowl's place as one of the most popular and iconic sporting events in the world.

Thus, Plaintiffs' failure to offer allegations sufficient to establish the element of causation requires dismissal of their NJCFA claim. *See Sauro v. L.A. Fitness Int'l, LLC*, No. 12-3682, 2013 U.S. Dist. LEXIS 58144, at *26 (D.N.J. Feb. 13, 2013).

## IV.

## PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT AN UNJUST ENRICHMENT CLAIM

Plaintiffs' unjust enrichment claim also fails as a matter of law. To begin, Plaintiffs' unjust enrichment claim fails because there are no allegations to demonstrate an underlying wrong. *See Swift v. Pandey*, No. 13-649, 2013 U.S. Dist. LEXIS 161590, at *19 (D.N.J. Nov. 13, 2013) ("New Jersey does not recognize unjust enrichment as an independent tort cause of action.") (citing *Castro v. NYT Television*, 370 N.J. Super. 282, 299 (App. Div. 2004)). Here, the only wrong alleged by Plaintiffs is a violation of Section 35.1 of the NJCFA. However, as discussed herein, Plaintiffs have not alleged facts sufficient to establish a violation of Section 35.1. Accordingly, Plaintiffs' claim for unjust enrichment must be dismissed. *See In re Schering-Plough Corp. Intron/Temodar*

*Consumer Class Action*, No. 06-cv-5774, 2010 U.S. Dist. LEXIS 56621, at *43-44 (D.N.J. June 9, 2010), *aff'd*, 678 F.3d 235 (3d Cir. 2012); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999).

In any event, even if an underlying wrong were found, there can be no argument that the NFL or the NFL Affiliates were enriched at all by Hoch-Parker's election *not* to purchase tickets to Super Bowl XLVIII. And Finkelman does not allege that the NFL or the NFL Affiliates were enriched by virtue of his purchase of tickets to Super Bowl XLVIII. In fact, Finkelman does not allege that he bought his tickets from the NFL or the NFL Affiliates at all.[19] Yet, an unjust enrichment claim requires a direct relationship between the plaintiff and the defendant. *Green*, 279 F.R.D. at 283. Accordingly, a plaintiff cannot bring an unjust enrichment claim against a defendant where -- as here -- he makes a purchase through a third-party. *See Nelson v. Xacta 3000, Inc.*, No. 08-5426, 2009 U.S. Dist. LEXIS 109580, at *19 (D.N.J. Nov. 23, 2009).

In addition, even if Finkelman had purchased his tickets from the NFL or the NFL Affiliates, Finkelman's unjust enrichment claim would still fail because his unjust enrichment claim is governed by a contract -- his Super Bowl tickets. Like many states, New Jersey recognizes event tickets as contracts. *See, e.g., Mayer v.*

---

[19]  The Complaint suggests that Finkelman purchased his tickets on the secondary market.  (Pressment Decl., Ex. B (Amended Complaint), ¶¶ 1, 32.)

*Belichick*, No. 07-4671, 2009 U.S. Dist. LEXIS 23052, at *9-10 (D.N.J. Mar. 23, 2009), *aff'd*, 605 F.3d 223 (3d Cir. 2010); *Shubert v. Nixon Amusement Co.*, 83 N.J.L. 101, 104 (N.J. Sup. Ct. 1912).  Under New Jersey law, an action for unjust enrichment may not be maintained where the relationship between the parties is governed by contract.  *See, e.g.*, *Dandana, LLC v. MBC FZ-LLC*, 507 Fed. Appx. 264, 270 (3d Cir. 2012); *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).  Thus, Finkelman's ticket precludes his claim for unjust enrichment.

## Conclusion

Based on the foregoing, Defendants' motion to dismiss the Amended Complaint should be granted in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated:  March 14, 2014

                                        Respectfully submitted,

HAYNES AND BOONE, LLP                    FOX ROTHSCHILD, LLP
*Co-Counsel for Defendants*              *Co-Counsel for Defendants*


By: _____              By: /s Karen A. Confoy_____
    Jonathan D. Pressment                    Karen A. Confoy
    *Admitted Pro Hac Vice*                  Princeton Pike Corporate Center
    30 Rockefeller Plaza, 26th Floor         997 Lenox Drive Bldg 3
    New York, New York  10112                Lawrenceville, New Jersey 08648
    Telephone No.: (212) 918-8961            Telephone No.: (609) 896-3600
    Facsimile No.: (212) 884-9561            Facsimile No.: (609) 896-1469
    Jonathan.Pressment@haynesboone.com       kconfoy@foxrothschild.com